Next case on this morning's docket is the case of Menard v. Threlkeld, and we have Mr. Niemeyer for the appellant, and Mr. Dowling for the appellee, and Mr. Bassett. I'm sorry, we did not get that far down yet. But I don't want to get into that. Was that a copy of those two? No, that's just for this next one. Okay, that's okay. So, Mr. Niemeyer, you may begin when you are prepared to. May it please the Court? Counsel? I'm Kevin Niemeyer. I represent Robert Menard in this appeal. We're here on the appeal of a grant of a motion for summary judgment, which the substance of the motion for summary judgment had two arguments. One was a statute of fraud defense, and the other was a standing defense. And as you can see by the Court's ruling on it, the Court granted a motion to deem a set of requests to admit admitted for failure to timely answer and used those requests to admit as a basis for the motion for summary judgment. And as a review of those requests to admit, there really isn't even much argument in the appellee's brief that those requests to admit were unrelated to the motion for summary judgment. The only request that was related at all was request number one, asking whether Mr. Menard had tendered tax reduction funds to this circuit clerk, or the county clerk. And that request, in fact, had previously been asked in another set of requests to admit and timely denied. So the only request that is relevant to the motion for summary judgment had already been denied in a previous set. So as it goes, the motion for summary judgment cannot be based on those requests to admit. However, the appellees have made their statute of frauds and standing arguments. The standing argument is Mr. Menard did not have an interest in the real property at the relevant times. Well, the basis of his claims are tortious interference with the Business Act expectancy, fraud, and conspiracy, which enfolds the fraud and the tortious interference. The fraud is based on misrepresentations made to him by defendant Martin Hubbard, causing him to fail to redeem the tax certificates, which caused the loss of his title to the property. So at the relevant time, prior to the time for redemption, he did have interest in the property, and that interest was lost due to the misrepresentations and the fraudulent conduct of one of the co-conspirators. The statute of frauds argument is that mischaracterizes or, more appropriately, recharacterizes the complaint to classify the complaint, the cause of action, as an oral contract. Was there an oral contract? Maybe. But the issues were the misrepresentations made to Mr. Menard to get him to perform in a certain way. There were misrepresentations that if you allow us to take over, to buy the taxis and not redeem, the property then will fall back in with our small group of people, and we will develop the properties and sell it for a higher profit, and we will lose the liens that are on it. But the conduct that the cause of action necessitates is the misrepresentations made to Mr. Menard, not the fact that this agreement to whatever the agreement was, was breached. It was the conduct that caused him to fail to redeem the tax certificates, which means he didn't pay $30,000 to redeem tax certificates on a property that was sold for $850,000. But isn't, I mean, if they had gone ahead and sold it back to him, we wouldn't be here, right? I'm not sure. Well, I thought that there was allegedly some oral contract that in fact the property was going to be sold back to your client, Mr. Menard. The agreement, from what I can tell, was that in lieu of him redeeming the tax certificates, one of the token spiriters, Betty Bollmeier in Black Orchid Trust 3, which they have never been served, so they're not part of the appeal, purchased the tax certificates. And when he failed to redeem, she got the property outright. She then sold the property within the token spiriters to James Threlfeld or the Threlfeld Investment Fund, which then the plan was all four, Threlfeld, Martin Hubbard, Bollmeier, and Menard were to sell the property or develop the property into apartments. That never happened. They sold a piece off for $450,000 and then they sold another piece off for $400,000. So what I'm saying is if that had never happened, if that had happened the way you allege it was supposed to happen under this oral contract, we wouldn't be here. Provided that they left him into the group. He had a right to redeem. He was right to redeem, willing to redeem. He was told, don't redeem. You will make more money if you fail to redeem and you go with us and develop these properties. So he chose not to redeem based on misrepresentations made to him by Martin Hubbard. Then by failing to redeem, he never had title of that property. He lost title based on the fraud that is claimed in the complaint, not based on this agreement of what we're going to do after you fail to redeem. The entire agreement was what happens after he fails to redeem the property. When he fails to redeem the property, the property falls into Black Lincoln Trust, which is then sold to James Frotheld, and then eventually the plans fell apart. But at that point he was out of the group. As soon as they convinced him through the misrepresentations of you can make more money this way, you can get rid of those liens if you go this way, they convinced him to fail to redeem, which cost him his title of the property. So the fraud was the reason for the loss of the property, so not that there's no contract and he's suing to get his piece of what the sale is. His damages are the $850,000 the property was sold for minus the cost to redeem the property. It's not for his piece of this agreement, it's they convinced him through misrepresentations to lose his interest in the property. So he lost the entire value of the property by going this route based on Martin Hubbard, his misrepresentations. The appellees have also brought a new argument for primary judgment, essentially that the – it ties in here – essentially that Mr. Menard has no damages because when we work out the – and this is really where the request of amends were relevant. The request of amends all are related to the income and cost of ownership of the property. And so that's why they really aren't directly related – they aren't related to primary judgment, they're related to their next argument, which was going to be lack of damages. I have a question about the – it was kind of difficult to follow the timeline on the request to admit, but at the time that the court had the hearing, eventually, was that like June or something? When they deemed them admitted, it was the same time they granted the summary judgment motion. And was not your client represented by counsel at that hearing? Yes, he was. And did the counsel file anything with respect to asking the court for time to actually answer these requests? No, they didn't. And actually, when preparing for this today, I read my initial brief and it was a little – not as clear as I wanted it to be. Our argument isn't that – isn't really based on the request to admit case law. It's not that we asked for extension and didn't get it or we had good cause for extension. We're not asking for extension at this point. The argument is the requests to admit were filed while there was what should be a stay of proceedings. And I thought that I followed that, but at some point he actually – Mr. Menard then actually represented himself for some period of time during this. Yes. And then at the actual hearing, there isn't an attorney that's representing him. Isn't it incumbent upon the attorney to make some request or petition the court for time to answer these? Or do you think the court sui sponte is supposed to give him time? I don't understand your position, even though there was improper service. At some point he – at some point when he's pro se, Mr. Menard's pro se, he knows that these are out there and unanswered. The issue is – Let me add one more point. Sure. There was no motion filed to stay the request to admit based upon this time period that he had to redeem or whatever. No. Nothing was filed. No. He just didn't do it. The first time that there was an argument or any argument made, debate, or anything with regards to – from Menard related to the request to admit were after they were deemed admitted, they were in the motion to reconsider. Okay. The issue is on May 22nd, Mr. Menard's attorney filed a motion to withdraw. Yeah, the 21st he filed a motion, and the 22nd was the hearing. Mr. Menard was not present at the hearing, and under Rule 13, if he's not present at the hearing, the order granting the withdrawal must be served upon – personally served on the party. How does that affect something that happens long after the fact when he's pro se and so he himself has notice of the request, and then his attorney actually appears before the court on the notices? Because at the time he was served with them, he didn't know he didn't have an attorney. Okay. That would excuse, I guess, that period of time, but at some point he's before the court himself, and doesn't he have – as an attorney representing himself, he has notice of these, and they are still extant? You're saying that they just go into some kind of limbo and never have any redress? What I'm saying is they weren't properly filed or served upon. And they can never be cured. Which can never be cured, and they should be vacated or restricted. They shouldn't need to be responded to because they were served upon him after the motion to withdraw was granted, but prior to him ever getting notice of that. I agree with you. I mean, that's got to toll. Not toll. Period. Not toll, strike. And from the time that the motion is granted until 21 days after he is given notice of that withdrawal, there can be no filings that are prejudicial to the party. But they aren't prejudicial if the court doesn't act on them. Well, the time for responding has to go by. You have 28 days from the time of filing. So these are filed, and they sit there for a year. A new attorney grabs a file and didn't answer it. But they were filed at a time when they weren't in the attorney's file. So your position is they never have to be answered? Well, correct. Okay. My position is they were served upon the plaintiff who thought he had an attorney, so he gets the documents, not realizing he needs the documents. They never get to the new attorney because the new attorney takes the old attorney's file. They were never served on the old attorney. They weren't in the file. So when you're a new attorney taking the case, you go through the file, the requests weren't there. There's no mention of them anywhere other than they were served on the client when he didn't know he wasn't represented. So there's no knowledge on either the client or the attorney's part that these need to be responded to. So when he has them, he has them personally, and at the point he's acting as his own attorney, he still does not have any duty to respond? He had them personally when he was not – he had no notice that he didn't have an attorney. Okay. I'm not getting anywhere. With myself. And the other thing, not only was his new attorney without knowledge of the request to admit, the motion to deem them admitted was also in that same timeframe. So not only were the requests not in the file, the motion that was granted wasn't in the file. So he goes to a motion of summary judgment, and the court just granted, deemed, admitted these requests of admits that he didn't know about. Because they were in the client's file, not the attorney's file, and the client didn't know he didn't have an attorney at the time. So that's kind of where it goes, because you need to have notice to be able to respond to it. And you need to have notice that your attorney has withdrawn to know that you have to get another attorney. I'm going to try one more question. Okay. When he ultimately, Mr. Menard, got the file from – is it Mr. Daniels who was the one that withdrew and was rather dilatory in getting the file to him? Mm-hmm. He's not contending, Mr. Menard is not contending that those requests were not in the file. The requests to produce were in – Requests to admit. Admit were in the file that he ultimately got from Mr. Daniels. The requests to admit were never served upon Mr. Daniels. They were served upon the client's personal. Okay. I mean, what documents Mr. Menard gave his new counsel, Last Name's Kijawa, I don't know. I don't personally know what documents, whether he turned over his personal documents or not. But I know that they were – the service on the request to admit was on Mr. Menard personally at his business. So were all these arguments made to the trial court that they were served on Mr. Menard and – No, they were not. Never in the trial court? No. Are they part of what record then? Just the fact that – Just the fact that – Cleaning? Mm-hmm. Filing? Yes. Nothing or an argument was made to the trial court? No. Additionally, quite a few of the requests to admit, which might – there's 15 requests to admit. From request 16 through request 15, all are legal conclusions or contain legal conclusions which are inappropriate under the case law and under the Supreme Court rules. You can request to admit facts and request to admit the authenticity of a document. Most of the requests to admit are admit that this amount of money we paid fell under the operating expenses of the operations property. Whether they're operating expenses or not is a legal conclusion for the court to make, not a factual fact for the plaintiff to admit to. Really, also the police have not even addressed that issue in the brief and under – But if we were to find hypothetically that it was appropriate for the court to deem them admitted, we can't go back in and look at the individual requests and determine whether or not they're conclusions of law or conclusions of facts, can we? I'm not sure why you wouldn't be able to. It would be a request to admit under an abuse of discretion standard, so you would have to – And you bargained that? Yes. You have to have the finding that you went beyond – that the court abused its discretion in deeming those admitted, but whether or not they're – under the Supreme Court rules, you cannot admit, and under the case law, heteromone v. Pekin is – no, that's not in the case law. But under the case law, I think it's R.A.P. Jones. If it's an admission of a legal conclusion, it's not a real admission. You can't admit to a legal conclusion. You can only admit to a fact, so – I don't believe – I don't think that is actually reasonable. You're claiming also that the requests to admit were related to the issue of damages, not to the theory of summary judgment. Well, they're not to the theories of summary judgment contained in the motions for summary judgment and the four previous – or three previous motions dismissed before the same arguments, which were the statute for us to stand in. Their requests to admit are to admit that we had these expenses, that these expenses exceeded what we sold the property for. Therefore, even if you're right in your argument that you were part of this conspiracy, we had a net loss. So you didn't lose any proceeds is what their argument is. And it's an argument that wasn't made before the trial court. None of the facts on that argument were made before the trial court. And, again, addresses the wrong set of damages. The damages are for our loss of property, not for our loss of the piece of the conspiracy. This is – we are not arguing that as a contract. It's for the fraudulent conduct, which is the entire cost of the property, not just one-fourth piece of an agreement between the parties. And you can see he had no interest in the real estate at the time the complaint was filed against the defendants. He'd lost – he hadn't paid the taxes, hadn't redeemed. Correct. Right? But the complaint is about the fraud that caused him to fail to redeem. So, yes, at the time it was filed, though, he didn't have an interest. But at the time he was defrauded, he did. Any more questions? I think that's all we have right now, Mr. Gehmeyer, and you'll have the opportunity for rebuttal. Thank you. Now, gentlemen, I believe you've already designated a division of your time. Mr. Gehmeyer, is that correct? No, I am here for the divided time. I believe we will all take time for issues separately. Okay. That's fine. You have the right. That's okay with the court.  Very well. Thank you. Good morning. Good morning. I'm the official of the court and counsel. I'm Bob Bassett here on behalf of Martin Hubbard and the Hubbard Investment Fund. The issues I'm going to specifically address relate to the summary judgment order of Judge O'Malley that was granted in this case. And Mr. Dowling is going to address the issues concerning the request to admit. And so to the extent that I don't argue those, I would ask that I adopt his arguments in that regard so as not to waive them. When I looked at this case, an issue that has bothered me from the very beginning is why would Mr. Minard give 100 percent of his interest in this real property in order to take share of interest in the real property? And I think while my question isn't conclusive as it relates to the issues before this court, I think it's indicative of the lack of merit to this lawsuit. The trial court properly granted summary judgment in this case, and they did so for a number of reasons. And as we cite in our brief, an appellate court can affirm a grant of summary judgment on any reason or any basis appearing in the record. And I would suggest to the court that there are four separate reasons that you could find summary judgment in this case. As you know, the complaint alleged that Mr. Minard owned a piece of property, and quite frankly, I think it's abundantly clear that this lawsuit is about a piece of property. I know there's some arguments arguing that trying to cloak things in the tort versus contract concept, and quite frankly, that takes me back 20 years to when the Mormon doctrine came around. Everybody was trying to ground the Mormon doctrine by talking whether it's a contract or tort. I think in this instance, when you boil down the issues in the complaint, it's quite frankly about a piece of property. Mr. Minard owned this piece of property. He alleged that he failed to redeem his taxes, that he was somehow duped into doing so. And yet I think the factual basis in the record and part of our summary judgment motion indicated and established without any rebuttal, there was no affidavit, no testimony to prove that, is that the initial purchaser on the tax sale was an entity who's not a part of this alleged conspiracy. They aren't a part of the alleged fraudulent conspiracy. I believe it's VI Global or something like this, but they were a purchaser. It was not Martin Hubbard. It was not Hubbard Investment Fund. It was not Threlkeld's or the Threlkeld Investment Fund or Black Orchid or Ben Ballmer. It was some independent third party. To me, that immediately breaks the chain of causation. So at a very minimum, there's adequate basis in this court record to show that the plaintiff will never make their proof as to causation because of the intervening sale to a third party. And there's no explanation in the response of the plaintiff's file to our motion for summary judgment as to how that could be. And I think the record is abundantly clear that with the sale to an independent third party, there could have been no causation, and I think that is certainly a sufficient basis for this court to uphold the court's summary judgment order. But the summary judgment was based upon the failure to answer the request to admit facts. I think in part, Your Honor, yes. And I think that goes to another basis, one of the other four basis, I believe, and that is the damages issue. I think if you look at the request to admit and if you take them deemed admitted, that there's no damage here in this instance. And I think certainly the record would be sufficient to support the summary judgment and upholding the summary judgment in that regard at all. The loss of the real estate is not damages? Well, that would go to point four on the summary judgment motion. And if what we're really talking about is the loss of real estate, then the claim is barred by the statute of frauds because he's attempting to enforce an oral contract for the sale of real property. And if that is truly what they're seeking damages for, then they are clearly barred by the statute of frauds. What about the value of the real estate rather than the real estate itself? I think the same. Rather than a contract. Well, I don't know. I guess I'm having a hard time drawing that distinction, Your Honor, because I think whether you actually have the real estate or you have the money for it, it still goes to the same issue, and that is the statute of frauds. And it clearly does forbid an action on an oral contract for real property. So I think that's point three. And the fourth point is what I call a standing issue and what we've argued. This property was sold to an independent third party. Again, an intervening actor. There was no affidavit, no document, or any evidentiary support provided in response to our motion for summary judgment that somehow, I mean, if you were to accept the plaintiff's allegations as true that there was this conspiracy to defraud him of his property, well, why wasn't it that one of the conspirators purchased the property in Texas or purchased it on foreclosure or however it is that Mr. Minard did that? And we don't have that in this case. And, in fact, it cannot be disputed. It's a matter of record that's been filed with this court. So for those reasons, and I think there's four sufficient reasons upon which this court could affirm the summary judgment order of Judge O'Malley. So unless you have any more questions with regard to the summary judgment issue, I'll allow Mr. Dowling to discuss. I do have one more question. The global group, at the time that they purchased it and then resold it, was there still a redemption option? I think there was an opportunity for a redemption option, yes. After the global sold it. I believe that's true. Okay. Okay? Thank you very much, and I would ask that you please affirm the trial record. Thank you. Mr. Court? I'm going to circle around this a little bit and follow up with Mr. Bassett and try to address some of the issues on the request to admit. Historically, what I think is in the record and what the court needs to focus upon is another basis for the motion for summary judgment. And I believe, Justice Tampkin, you're having a little trouble figuring out the timeline on some of the stuff for the request to admit. But it also affects the timeline on the property. What the court needs to remember is that Mr. Menard, even at the time that he failed to redeem his property, didn't own the property anyway. There was already a foreclosure proceeding that had taken the property away from him. Title had been transferred by the foreclosure. There was a foreclosure sale that had been set, had not gone on. He was nothing more than essentially a tenant in possession or a mortgagee in possession pending the foreclosure sale. He had no interest in the real estate at that point in time. Which is the basis for his tort, claiming that he was told not to redeem the tax. Two different issues, sir. One is the bank mortgage. The bank had foreclosed on the land and had actually gone all the way up to the time of the tax sale. At that point in time, for some unknown reason in the record, the tax sale was not completed. Mr. Menard was still in possession of the property in terms of operating it, but he was not in legal ownership of the property. During that period of time, or during that process, he also lost the land to a tax sale. That was done in 1998. The foreclosure was actually a little bit earlier than that. It had gone through in September of 1998, and October of 1998 is the tax sale. At which point, two different groups buy the land. VI group buys one parcel, because this is a tentative parcel of land and essentially it's two different parcel numbers. Nine acres is one, one acre is two. VI group buys one parcel, Global Services buy another parcel. They have up until October 28th of 2001 within which to, or Mr. Menard has up until October 28th of 2001 within which to redeem the property. That is never done. Betty Bollmeier, and this will get to... So, are you saying that at the time the redemption runs, that Global and VI are still in possession of the... No, ma'am. Are they still the owners? In all candor, I don't remember the exact date that Betty Bollmeier got an assignment of VI group tax certificate and an assignment. I know it's in the record, and got an assignment of the Global Tax Service. I believe it was late October, so there was probably a two-week overlap, or two weeks left to redeem. Maybe even as much as... Do you think that's critical at all? No, I don't. Then why not? Let's go back and look at then what the basis of the complaint is. Mr. Menard wants to say that I was duped into not redeeming my property, and therefore I lost my property. He was duped by saying, well, if you don't redeem it, we'll be able to wipe out all these lien creditors. He was duped, but if you look at the complaint, he was duped for essentially three years, according to his complaint, because he makes allegations in his complaint that he had a contract drafted and written up for Mr. Hubbard to sign, but Mr. Hubbard evidently was too drunk any time he showed up to sign it, so therefore the contract never got signed. First of all, clearly the intent of Mr. Menard and Mr. Hubbard, and obviously Mr. Freckle is not involved in those allegations in the complaint, is that they intended to take this oral agreement to a written agreement, invoking the statute of frauds. I'm not trying to trample on the frauds, but that's all in the complaint. But if you really look at the complaint, it's a conspiracy to defraud Menard's creditors. That's all this is about. Mr. Menard is literally saying, because I was told if I didn't redeem my property, you guys would buy it, which of course is taking a chance because they didn't buy it anyway. VI Group did, and Global Tax Service did. So there's one problem with trying to hit the conspiracy in the first place. You guys buy it, now I don't own the land, yet you will let me back into the deal to develop the land, because then we've got it free and clear of any of my lien creditors, and we can all sell it and make a bunch of money. That's what the essence of the complaint is, which is illegal activity in the first place. He's saying the fraud or the tort committed was the fact that he wasn't able to defraud his creditors because he was defrauded. Doesn't make much sense. Betty Bullmeier has never been served. She is now three years, four years into this litigation. Black Organ Trust has never been served. So even if you want to focus on the fact that there was some time limit, some time during which Mr. Bernard could have redeemed the property during Betty Bullmeier's assignment of the tax certificate, what you first have to assume is that Betty Bullmeier would have sold it to him. And that's not alleged in the complaint. You have to assume that Betty Bullmeier was a part of the conspiracy, which he cannot make, because obviously he would now have to come in and show that for four years, four years I have not been able to find Betty Bullmeier and what attempts did I make to serve Betty Bullmeier, so it doesn't get dismissed under 103B. In all candor, I doubt that that's ever going to happen. So now you're missing an integral part of the conspiracy. Betty Bullmeier is not there. She sells it to the Threatened Health Investment Fund actually in December of 2001, three months or two months of change after the redemption period ends, about a month after the tax certificate or the tax deed is actually issued. We go along, and I'll zip up to the request to admit. Long litigation history for a couple of years. The request to admit is filed every week. The motion to withdraw is filed in May of 2008. And this is where I think Mr. Niemeyer might be a little bit disingenuous in trying to maybe even mislead the court a little bit about the timeline here. He wants to argue that Mr. Menard had no clue that he didn't have an attorney, and that's where it's disingenuous. Mr. Menard sent a letter to Mr. Williams or Mr. Daniels, which is attached to his motion to withdraw his attorney of record, saying, you're fired. Send my file to Williams and Caponi. Here's a substitution of attorneys form filled out for your name, for Williams and Caponi as well. I'm gone, or you're gone, Mr. Daniels. I don't want you. He files a motion to withdraw on that basis. The court order gets entered in May 22 of 08. Now, the order simply says in May 22 of 08 simply says he's withdrawn. The motion to withdraw is granted. The request to admit facts was filed July 14, 2008, more than 21 days after Mr. Daniels had been permitted to withdraw. It was personally served by certified mail upon Mr. Daniels. He signed it. That receipt is in the record. He knew of its existence. He comes into court, he meeting Mr. Menard, comes into court personally on August 25, 08, when there's another hearing scheduled. Okay, help me with this. Okay, sure. The court improperly allowed the withdrawal, correct, because there really wasn't a substitution. Those attorneys never did. They never did. Okay, so at the time that Mr. Daniels gets the request, he actually is still his attorney in the sense, no? No, ma'am. Doesn't the court back up and give him? I'll tell you what, I think it does get a little confusing in there. Mr. Daniels, as of May 22, 2008, has been granted authority to withdraw as attorney of record. That's the court order that's found in the record at 262. More, roughly 45 days later, July 14, 2008, the request to admit is filed. The next court hearing is actually on August 25, 2008, about another 45 days after the request to admit had been filed. At that point, Mr. Menard shows up in person. He signs the order, and that's at A272 in the record. And the court reflects in the order that the order failed to reflect Menard's rights and obligations under Supreme Court Rule 213, or excuse me, 13. And therefore, it gave Menard an additional 21 days to go find another attorney. The court took no action whatsoever on the request to admit. So they gave him up until September 15 to find another attorney or to notify the clerk of his address, all pursuant to Supreme Court Rule 13. They also reset the case in that order for a hearing on all pending motions. At the time that this order was entered, a pending motion was the request to admit the, excuse me, a motion to deem the facts admitted. So Menard knew all of that, and he was there in person to do it. Except that if the court had appropriately handled the motion to withdraw, he would have never been there representing himself. Correct? I believe, first of all, the court appropriately handled the motion to withdraw. If you look at the motion that Mr. Daniels filed, it clearly sets forth why I'm withdrawing and the fact that, in essence, my relationship has been terminated. Right, but the court cannot do that unless it does give him the 21 days or there's a substitution file. I don't disagree. The court order in May didn't say you've got 21 days. Did the court, in fact, give him 21 days when there was nothing pending and did nothing to prejudice his rights one way or the other? The answer is yeah, he did. The court did. They didn't spell it out. Unfortunately, of course, it's not on the records that Mr. Menard was there absolutely every single hearing in regards to whether or not he had an attorney. He was just there. Does he ever have the request to admit? I'm sorry? Does he have actually the request to admit? I'm sorry, I made it. Personally, does he have the request to admit? He was served with it, and he signed for another certified male. He was given the request to admit in July of 2008. I mean, it was served specially to him. So the record would reflect, if nothing else, by inference, I followed Supreme Court Rule 13. I didn't do anything for 21 days. This was 45 days after the fact that these things were actually given. What the court record could reflect, and to the extent I can ask the court to take judicial notice of it, you would almost have to go back to St. Clair County. There was a total of three lawsuits with Bobby Menard. Two of them were in front of Judge O'Malley. One was in front of Judge Machine. Daniels was the attorney on all three of them. Mr. Daniels filed a motion to withdraw in this case but did not file a motion to withdraw on the other two cases, and quite truthfully, I think that kind of confused the judges myself. And that led to this subsequent August order, where he did say, you know what, fine, I'll make sure I give you another 21 days. And he spelled it out for him. So at least by that point, August 25th of 08, Mr. Daniels knows a couple things. One, he knows that there's a request to admit. Two, he knows there's a motion to deem the request to admit, the facts in the request to admit, to deem them to admit it. And three, he knows he's got 21 days within which to file a supplemental injury appearance, either pro se. You've done Mr. Menard, didn't you? I'm sorry if I said that. Yes, I'm sorry. Mr. Menard knows those things. None of that happens. We go to September 4th, which is about a week after that, August 25th or two weeks after the August 25th order, and Bobby Menard is there again in person, and that's at 1863. And Mr. Daniels is there, and they do the official motion to withdraw one more time, and they give him actually now 30 days to do anything. So Judge O'Malley is bending over backwards to make sure that Mr. Menard's rights are taken care of and that he's just not willy-nilly granting some request to admit or deem facts admitted. So now we come back 30 days later, and in between, Bobby Menard files a motion to compel, an emergency motion to compel. And that's filed on September 29th, 08, and that's at, well, I guess it's in their appendix, A274. The record, I think, is C-499, according to the written. And it's all about Mr. Daniels giving my file. Literally from September of 08 through roughly March of 09, when Mr. Kajawa comes in, hearing after hearing after hearing is nothing more, and these court orders will reflect it, is nothing more than Bobby Menard saying, give me more time, I can't get my file, or Mr. Daniels won't give me my file. The court ordering Mr. Daniels to show up and doing things with his file. The court never once took any action against Mr. Menard. Despite their ability to do so as early as probably October 1st, if you want to figure August 25th, he gives him 21 days, September 4th, he gives him 30 days, you know, to enter a pro se or find another attorney. They could have actually had a hearing as of October 1st of 08 on the original motion to deem the facts admitted. The court didn't do that. Bobby Menard knows this all along.  Six months later, Kajawa comes in. You can finish your thought, and then I think we're going to have to... I'm sorry. Thank you, ma'am. Six months later, Kajawa comes in, files his response to the motion of summary judgment, but does not file any responses to the request to admit, doesn't ask for leave, doesn't try to show good cause under 183, and ultimately we come through and we get the request to admit. All those facts are deemed admitted. You know, they go to the heart of the complaint. They go to damage. If you want to look at the summary judgment motion in the likeness favorable to Mr. Menard, he still loses. You're admitting that they go to the issue of damages? I'm sorry? You're admitting that the request to admit went to the issue of damages? Well, if you look at it, it's basically all an accounting issue with the exception of the fact of the first one that says you didn't redeem these things anyway, you know, this property anyway. All of those would have been deemed admitted. You know, and that goes to one of Mr. Bassett's arguments up front is that, you know, there's several bases for a motion for summary judgment, and one of those bases is the fact that there is no damages. But I think just if you look at the history of this case, as we pointed out, he didn't own the land because of the bank foreclosure and it's clearly a contract under the statute of frauds. That was what they're... Again, he alleged it in his own complaint. He can't come now back to you guys and say, well, it's really a tort because we're in a fraud and not a contract. Mr. Delling, I appreciate your argument and your time. It's a complicated case. I know it's hard to summarize. Thank you, Mr. Niemeyer. You have the opportunity for rebuttal. Okay. First I want to address the letter from Mr. Menard. The letter actually was signed a month before it was faxed to Mr. Daniels. He went to another attorney, it was faxed from the attorney's office, signed the letter asking Mr. Daniels to be substituted for the new attorney. It wasn't immediately sent. He didn't send it himself, and there was no substitution ever filed at the court. So what happened between that attorney's office sending it or whatever, it wasn't he acknowledged that there was a substitution. He met with another attorney's office who were looking into taking over the files. He was never given notice that the letter was sent. He was never given notice that the substitution, or there was no substitution that was ever filed, so he wasn't aware that this was going on. He was aware that he was trying to replace Mr. Daniels because there were other issues going on, but he had never been given direct notice.  It was faxed from the attorney's office, so it wasn't that he acknowledged of the letter being sent directly. He signed the letter and it was up to the attorneys to deal with that. Also, going back to the intervening purchaser, the VI and the Global, when they purchased the property, it was prior to the redemption period. They purchased the property, and then it went, as I said, by assignment to Betty Beaumont. So Betty Beaumont was, and is, considered one of the conspirators who the allegations of fraud relate to, and she owned the property, the tax certificates, which could have been redeemed. So whether or not somebody bought those tax certificates prior to her and then they got to her is irrelevant to whether or not, at the time, the tax certificates could have been redeemed. One of the co-conspirators owned those tax certificates, and the reason for his failure to redeem was the statements of the co-conspirators. Do you need to have that co-conspirator in your case? Ms. Bollmeier, is that her name? Bollmeier of Black Orchid Trust is actually the entity. I'm not sure on that issue. Whether or not the failure to serve and have been the case of one of the co-conspirators is necessary. She has not technically been dismissed yet. She's not been served, so she's not in the case, but she's a listed defendant. She's part of the conspiracy. If you need, I could brief the issue yet. I don't have any, that was not part of the issues briefed in the case I briefed. I don't have an issue, knowledge of whether or not she is required to maintain the conspiracy, whether she's a required party to maintain the conspiracy. That's about all I had, unless you have any questions. Thank you. Thank you, all gentlemen, for a very interesting and complex case. We'll take a matter under advisement.